U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 2 0 2013

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DENNIS MICHAEL GOSDIN,            §
                                  §
            Petitioner,           §
                                  §
v.                                §        No. 4:12-CV-854-A
                                  §
WILLIAM STEPHENS, Director,[1]    §
Texas Department of Criminal      §
Justice, Correctional             §
Institutions Division,            §
                                  §
            Respondent.           §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by petitioner, Dennis Michael Gosdin, a state

prisoner currently incarcerated in Iowa Park, Texas, against

William Stephens, Director of the Texas Department of Criminal

Justice, Correctional Institutions Division (TDCJ), respondent.

After having considered the pleadings, state court records, and

relief sought by petitioner, the court has concluded that the

petition should be denied.

_____

[1]Effective June 1, 2013, William Stephens succeeded Rick
Thaler as the Director of the Correctional Institutions Division
of the Texas Department of Criminal Justice.  Pursuant to Rule 25
of the Federal Rules of Civil Procedure, Director Stephens "is
automatically substituted as a party." FED. R. CIV. P. 25(d).

## I.  Procedural History

In December 2007 petitioner was indicted on two counts of aggravated sexual assault with a deadly weapon, a knife, in the Criminal District Court Number Four of Tarrant County, Texas, Case No. 1083422D.  (SHR at 90[2])  The indictment also included a repeat offender notice, alleging a prior 1998 felony conviction for sexual assault in Tarrant County.  (SHR at 90)  On July 30, 2008, a jury found petitioner guilty on both counts, and the trial court found the repeat offender allegation true and sentenced petitioner to life imprisonment for each offense.  (SHR at 92-97) Petitioner appealed his convictions, but the Second District Court of Appeals of Texas affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused his petition for discretionary review.  (SHR at 98-104)  *Gosdin v. State*, PDR No. 1485-09.  Petitioner also sought postconviction state habeas corpus relief, to no avail.  (SHR at cover)

The state appellate court set forth a brief factual background of the case as follows:

> The complainant, "Erica" (a pseudonym), is a prostitute.  She testified that Appellant picked her up off the street in his pick-up truck, drove her to a

---

[2]"SHR" refers to the state court record of petitioner's state habeas proceeding in WR-76,293-02.

secluded location, and – when she insisted that he pay
her "before anything else went on" – pulled out a
knife. Erica described the knife as "[l]ike a Bowie
knife, a long one," "a huge knife," with "spikes" on
the back edge.  She testified that Appellant leaned
toward her with the knife in a threatening manner,
pointed the knife at her stomach, and ordered her to
undress.  She said that she believed the knife could
cause serious bodily injury or death, that Appellant
had the present ability to cause serious bodily injury
or death, and that she was afraid Appellant was going
to kill her. The knife was admitted into evidence and
shown to the jury, and a photograph of the knife
appears in the record.  The knife has a blade seven and
three-quarter inches long, a barbed or deeply serrated
spine, and "knuckles" on the grip.

Appellant forced Erica to perform oral sex on him;
then he penetrated her female sexual organ with his
penis.  Afterwards, Appellant allowed Erica to get out
of his truck.  She memorized his license plate number
and reported the assault to the police.

(SHR at 99)

The record also reflects that Erica identified petitioner at

trial and in a photo lineup shortly after the attack as the

person who assaulted her.  (RR, vol. 3, at 59-60, 136-38)  She

described petitioner's truck, his tattoos, pictures of which were

introduced into evidence, specific questions he asked her during

the assault, and the fact that he did not use a condom.  (RR,

vol. 3, at 39-40, 50-51, 188)  She also testified that petitioner

took two pictures with a pink cell phone of his penis inserted

into her vagina, and that he ejaculated on the floorboard of the

3

truck.  (RR, vol. 3, at 50-52)

Petitioner's wife, Pamela McGee, testified that there was one picture on her daughter's pink cell phone, which petitioner was using at the time, of a penis inserted into a vagina, that she assumed the photo was of the two of them having sex, and that she deleted the photo, among others, before speaking to the police.  (RR, vol. 3, at 118-20)

Detective Linda Hill testified that McGee told her she was unaware of petitioner ever taking pictures of the two of them having sex and that the deleted photos were not retrievable. (RR, vol. 3, at 144-45)  A search of petitioner's truck, pursuant to a search warrant obtained the next day, revealed a club and two knives, one of which was identical to the knife described by Erica.  (RR, vol. 3, 149-54)  A "black light" was also used in the truck, revealing bodily fluids on the passenger side seat cover and floorboard.  (RR, vol. 3, at 155-56)

The sexual assault nurse examiner testified that Erica described the assault to her, which matched Erica's own version of events at trial, and that there was no physical evidence of injury, which was not uncommon in these circumstances.  (RR, vol. 3, at 173-80)

Petitioner chose not to testify, having been advised by

4

trial counsel that the state would be able to impeach him with his prior conviction for sexual assault, the specific circumstances of his prior conviction - that he forced his ex-wife to perform fellatio, that he took photographs of her during this sexual assault, and that he threatened to kill her, and, depending on his testimony, accusations by two other prostitutes that he attempted to sexually assault them.   (SHR at 59) Nor did defense counsel call any witnesses or present evidence on petitioner's behalf.   (RR, vol. 3, at 193-95)

## II.  Issues

Petitioner raises five grounds challenging his convictions:

(1)   Petitioner was denied a fair trial by the state's dilution of the presumption of innocence;

(2)   Trial counsel was ineffective by failing to suppress evidence having a causal connection to petitioner's unlawfully seized vehicle;

(3)   Trial counsel was ineffective by failing to determine whether individual veniremembers would be fair and impartial to petitioner not testifying;

(4)   Trial counsel was ineffective by failing to present a defense; and

(5)   Trial counsel's cumulative errors amount to ineffective assistance.

(Pet. at 7-9; Pet'r Mem. at 6-24)

### III.   Rule 5 Statement

Respondent asserts that petitioner's first claim is procedurally barred but that the petition is not otherwise barred by limitations or subject to the successive petition bar. (Resp't Ans. at 4)

### IV.   Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.*

*Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings.  *Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

In this case, the state habeas court entered findings of fact, which were adopted by the Texas Court of Criminal Appeals. (SHR at cover, 54-65, 89)  Petitioner has failed to rebut the state court's factual findings by clear and convincing evidence; thus, this court defers to those findings in addressing petitioner's claims below.

### *(1)  Fair Trial*

In his first ground, petitioner claims the state "diluted" the presumption of innocence by:

> (1) telling the venire panel that there are two witnesses to a sexual assault – the victim and perpetrator – but since the defendant had a right not to testify then the jury would only hear from the victim; (2) repeatedly referring to the complainant as "the victim"; (3) linking the petitioner to "every person" convicted and sent to prison; and (4) consenting to "political correctness" in a criminal trial.

(Pet'r Mem. at 7)

Petitioner raised this claim for the first time in his postconviction state application for writ of habeas corpus, and the state habeas court expressly found the claim to be procedurally barred because the claim was not raised on direct appeal and because jury selection complaints are not cognizable on writ of habeas corpus as a matter of state law.  (SHR at 64-65)

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default.  *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th

Cir. 1999); *Fisher v. State*, 169 F.3d 295, 300 (5th Cir. 1999).
The habeas court clearly relied upon firmly established and
regularly followed state procedural rules to recommend denial of
petitioner's claim, which represent an adequate state procedural
bar to federal habeas review. *Ex parte Gardner*, 959 S.W.2d 189,
199 (Tex. Crim. App. 1996) (holding Fifth Amendment claim is
procedurally defaulted because not raised on direct appeal); *Ex
parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding
"the Great Writ should not be used to litigate matters which
should have been raised on appeal"). Therefore, absent a showing
of cause and prejudice or a miscarriage of justice, such showing
not having been demonstrated, petitioner's claim raised for the
first time in his state habeas application is procedurally barred
from this court's review.

### (2) - (5)   Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was ineffective by
failing to suppress evidence having a "causal connection" to
petitioner's unlawfully seized vehicle, to determine whether
individual veniremembers would be fair and impartial to him not
testifying, and to present a defense. He also asserts that
counsel's cumulative errors amounted to ineffective assistance.
(Pet. at 7-9; Pet'r Mem. at 8-24)

9

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Further, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Where the state courts have applied the *Strickland* attorney-performance standard to factual findings, a federal court will defer to the state courts' determination unless it appears the

10

decision was contrary to or involved an unreasonable application of *Strickland*, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner was represented at trial by Lex Johnston as lead counsel and Candace Taylor as second chair. (SHR at 56) First, petitioner claims counsel was ineffective by failing to suppress evidence, the Bowie knife, "causally connected" to his seized vehicle. (Pet. at 7; Pet'r Mem. at 9-15) According to petitioner, the police lacked probable cause for a warrantless search and seizure of his truck while legally parked in his driveway, without any indication that his truck was recently driven or involved in a crime. He urges that he made no furtive gestures and that it is not uncommom for people to give the wrong license plate number when reporting a crime or for prostitutes to experience "theft of services," whereas "it is 'very uncommon' for prostitutes to report sexual assaults." (Pet'r Mem. at 12)

The state habeas court conducted a hearing by affidavit regarding petitioner's ineffective assistance claims. Counsel responded to this allegation as follows:

I did not seek to have the evidence, specifically,

11

the bowie-style knife that was found in the driver's
door pocket of Mr. Gosdin's truck, suppressed because I
did not believe that there was a legally cognizable
argument FOR having it suppressed.  The vehicle was
seized and placed in a secure facility for safe-keeping
until a warrant was obtained to search the vehicle.
Texas Rules of Professional Conduct, Rule 3.01 states,
"[a] lawyer shall not bring or defend a proceeding, or
assert or controvert an issue therein, unless the
lawyer reasonably believes that there is a basis for
doing so that is NOT frivolous."  I rely upon a long
number of cases, including, Maldonado v. State, 528
SW2d 234 (Tex. Crim. App. 1975) and Carroll v United
States, 267 U.S. 132 (1925) and their progeny as
guidance that says that a vehicle can be held, but not
searched, until a lawfully obtained search warrant,
signed by a neutral magistrate, can be obtained, which
is what happened in this particular case.

Additionally, I consulted with Mr. Patrick Curran,
the attorney originally representing Mr. Gosdin and who
filed the pre-trial motions that I adopted in this
matter, as well as Mr. Steven G. King, the owner of the
firm that Mr. Gosdin ultimately hired and my boss at
the time, concerning the suppression issue.  Both
attorneys concurred with my opinion that no legal
reason to suppress the evidence existed.

(SHR at 43) (emphasis in original)

The state habeas court entered findings of fact consistent

with counsel's affidavit, and applying the *Strickland* standard,

concluded that counsel's decision not to seek suppression of

admissible evidence was reasonable.  (SHR at 59)  Deferring to

the state court's findings, petitioner has failed to demonstrate

the state courts unreasonably applied *Strickland*.  28 U.S.C. §

2254(d).  At trial, Fort Worth Police Officer Garlinda Hempstead

testified that she was on patrol on the day in question and answered the dispatch regarding the offense, a description of the truck, the license plate number, and petitioner's name and address. (RR, vol. 3, at 94-95) She proceeded to the address given, where she located petitioner's truck in a driveway several houses down. (RR, vol. 3, at 94-95) She waited for backup assistance and began setting up a "perimeter" around the house. (RR, vol. 3, at 97-98) After additional officers arrived, she approached the truck and felt its hood, which was hot, indicating to her that the truck had recently been driven. (RR, vol. 3, at 99) At that point, the garage door began to open, and petitioner was standing in the doorway. (RR, vol. 3, at 99) She drew her weapon and asked petitioner to step outside and talk to them. (RR, vol. 3, at 100) For "everybody's safety," she had petitioner handcuffed and advised him that he was "being detained for investigation and, at this time, [was] not under arrest." (RR, vol. 3, at 100) Petitioner was thereafter transported to the police station. Officer Hempstead stayed at the residence to wait for a tow truck to take petitioner's truck to the Fort Worth auto pound, where it was secured in a bay with a "hold" placed on it for the "detective's office." (RR, vol. 3, at 101-03) On cross-examination, Officer Hempstead agreed that it was common

for car hoods to be hot in September, that she had not seen petitioner inside the truck at any time prior to placing him under arrest, that the truck was legally parked, and that she had no search warrant for the vehicle when she ordered it to be towed. (RR, vol. 3, at 103-04)

Petitioner has not demonstrated that the above circumstances provided a valid basis for a motion to suppress, that counsel was deficient for failing to file such a motion, or that such a motion to suppress would have been successful. *Strickland,* 466 U.S. at 694. Contrary to petitioner's assertion, the police were entitled not only to seize petitioner's truck but to search the truck after it had been impounded without a warrant, although a search warrant was obtained prior to the search. (Pet'r Mem. at 12-14) The police had reason to believe the truck had been used in the commission of a crime and that it could contain evidence of the crime. Further, there was a likelihood that petitioner's wife or other third party would move the truck or tamper with or destroy evidence in truck before a warrant could be obtained if left unattended. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Carroll v. United States*, 267 U.S. 132, 149 (1925). *See also Carlton v. Estelle*, 480 F.2d 759, 764 (5th Cir.), *cert denied,*

414 U.S. 1043 (1973) (in a rape case, police could conduct a warrantless search or make a warrantless seizure of a stationary car).

Second, petitioner claims trial counsel was ineffective by failing to determine whether individual veniremembers would be fair and impartial to petitioner if he did not testify. Counsel responded to this allegation as follows:

> As the Court well knows, I have, on many occasions, asked each and every venireman in panels, questions in order to find a reason to strike some for cause. In this particular voir dire, I did not, based upon my experience in trying cases of this magnitude, believe that I would get any additional veniremen to commit themselves on the issue of the 5th Amendment. Ms. McIntire, the Assistant District Attorney representing the State in this matter had asked the question about whether or not the veniremen would have a bias against Mr. Gosdin before I asked them.
>
> Mr. Gosdin's reliance on the purported statistic that the fact that I only individually questioned 9% of the panel on this matter would lead to a reasonable probability existing that some of the "selected" jurors would have a bias against Mr. Gosdin based upon his decision to not testify, is, in my opinion, farcical. After the trial, the selected jurors overwhelmingly stated that their bias against Mr. Gosdin was not based upon his decision to not testify, but on his appearance and the overwhelming evidence against him as presented by the District Attorney.

(SHR at 44)

The state habeas court entered findings of fact consistent with counsel's affidavit, and applying the *Strickland* standard,

15

concluded that counsel's decision not to re-ask the veniremembers was reasonable and that petitioner provided no evidentiary basis to establish juror bias on the basis that he did not testify. (SHR at 59-60, 63)  Deferring to the state court's findings, petitioner has failed to demonstrate the state courts unreasonably applied *Strickland*.  28 U.S.C. § 2254(d).

Petitioner concedes that the state prosecutor addressed the issue of his Fifth Amendment right not to testify with the venire panel, and the record supports this fact.  (RR, vol. 2, at 32-42)  Additionally, the trial court admonished the prospective jurors regarding a defendant's right to remain silent before voir dire:

> THE COURT:  If the defendant does not choose to testify, you may not consider that fact as evidence of guilt nor may you, in your deliberations, comment on or in any way allude to that fact.  Can anyone not follow that instruction if it's given to you in the Court's charge?
>
> (No response.)
>
> THE COURT:  I assume you can.

(RR, vol. 2, at 13)  Finally, petitioner's counsel also queried the panel on the issue, although he did not question each veniremember individually, and spoke with jurors after trial who confirmed that their decision was not based on the fact that petitioner did not testify.  (RR, vol. 2, at 106-10)

16

Juror bias is present when the juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson,* 207 F.3d 232, 242 (5th Cir.) (quoting *Wainwright v. Witt,* 469 U.S. 412, 424 (1985)).  Bias may be either actual or implied.  To demonstrate actual bias, "admission or factual proof" of bias must be presented.  *United States v. Bishop,* 264 F.3d 535, 554 (5th Cir. 2001).  Petitioner offers no evidence of actual bias nor has he presented the type of evidence upon which bias may be presumed.  *See Solis v. Cockrell,* 342 F.3d 392, 396-99 (5th Cir.2003) (discussing limited scenarios in which implied bias might exist).  Mere speculation of juror bias does not raise a constitutional issue in a habeas case.  *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983).

Third, petitioner claims counsel was ineffective by failing to present a defense.  (Pet'r Mem. at 18-24)  Specifically, petitioner claims counsel was ineffective by informing the jury during his opening statement that "he expected to prove that complainant's 'boyfriend [Andre C.] was upset that she got jipped out of $25 and that's why we're here today[,]" but then failed to present witnesses or adequately cross-examine the victim concerning the matter.  (Pet. at 8; Pet'r Mem. at 18, 20)

17

Petitioner also claims counsel was ineffective by failing to reveal the "real world of prostitution," through expert testimony or "by confrontation or compulsory process of the complaint's boyfriend [and pimp, Andre C.]," to help the jury "to not only understand the role of a prostitute's 'boyfriend' but also that a prostitute has reason to fear being assaulted by her 'boyfriend' if she doesn't turn-over her money and that that fear "would explain her motive for making a false allegation of rape or robbery." (Pet'r Mem. at 18-19, 22) Counsel responded to this allegation as follows:

> First, Mr. Gosdin's statement that I told the jury that "I expected to prove" anything is a pure fallacy. I did not state that I expected to "prove" anything. I did, however, state in my opening statement that "the evidence is going to show . . . that her boyfriend was upset that she got jipped out of $25 . . . ."

> Because I have been ordered to supply an affidavit in response to this writ and because Texas Rules of Professional Conduct, Rule 1.05(c) state that a "lawyer may reveal confidential information . . . to establish a defense to a . . . claim against the lawyer . . . based upon conduct involving the client or the representation of the client," the following information that would have remained confidential is now being disclosed.

> From shortly after Mr. Gosdin's arrest on or about September 12, 2007 until he contracted with The Law Firm of Steven G. King, PC (hereinafter The Firm) on March 31, 2008, Mr. Gosdin was represented by Patrick Curran. On March 31, 2008, Mr. Gosdin contracted The Firm in order to represent him during the trial on this

matter.  I was assigned as primary trial counsel on that date.  Mr. Gosdin stated that he did, in fact, have sexual relations with the complainant in his Ford Ranger pickup on September 12, 2007.  He stated that he drove through the area looking for a prostitute and that he saw the complainant, agreed to pay her $25 for fellatio (as he termed it, a "blowjob"), drove her to the end of a dead end street, and refused to pay her. He stated that he did not assault her and never showed her a knife, although she may have seen the handle of the knife in the door panel while she had her head in his lap.  At the time that we were hired, Mr. Gosdin had already reached the Court's trial docket and was scheduled for his first trial appearance on May 12, 2008.  Throughout the course of my representation, Mr. Gosdin never changed his story about the incident and insisted on a trial.

Based upon my reading of the police reports and Mr. Gosdin's confidential admissions to me, I believed that the only defense that was possible was to muddy the waters, so to say, and try to convince the jury that the complainant was just upset about not being paid.  Mr. Gosdin was informed of all of the evidence that the District Attorney had against him and was advised of the benefits of hiring a private investigator as well as hiring Eric Holden to conduct a polygraph examination.  Mr. Gosdin disregarded this advice and provided nothing more than his word about the events.

Mr. Gosdin believes that I should have subpoenaed Andre C. to testify on his behalf, but there were, in my opinion, a couple of problems with this.  First, I hade no information on the person that summoned help for the complainant.  Police responded to a "suspicious person" and found the complainant being treated by fire department personnel.  It was only during the trial that we learned that Andre C. existed, but there was no evidence that he was material to the case at all.  The complainant testified that Andre C. was, at the time, her boyfriend, but provided nothing to indicate that he was a pimp or knew anything about this matter.  The

second problem that I would have had in subpoenaing
Andre C. is that I would have been forced to subpoena
him to testify that he was a criminal in order to
achieve the result that Mr. Gosdin desired.  Mr. Gosdin
believes that I should have subpoenaed Andre C. to
testify that he was the complainant's pimp and that he
was upset that he was not getting paid for the blow job
that Mr. Gosdin received without paying.  He also
believes that Andre C. could testify about the
complainant's character for truthfulness and her drug
use.  Unfortunately for Mr. Gosdin, I am bound by the
Texas Rules of Evidence and I cannot call a witness for
the purpose of impeaching him, which is, basically,
what Mr. Gosdin indicates he wanted me to do.  I can
also not call a witness when I know that he will exert
his rights under the 5th Amendment and refuse to answer
any questions that might tend to incriminate himself.
When I discovered Andre C.'s true identity (Andre Seay)
on July 28, 2008 (after trial had begun), I found that
he had been arrested on a variety of charges, including
the felony offenses of possession of a controlled
substance, delivery of a controlled substance, as well
as failure to identify.  I found that he was
represented by an attorney and that he was in custody
at the Tarrant County Jail.  While I cannot remember
his attorney's name, I remember speaking to the
attorney handling his cases at that time and requesting
permission to speak with him.  I was told that I did
not have permission to interview him in the jail about
testifying and that if I subpoenaed him to testify, he
would be advised to plead the fifth.  I will not put a
witness on the stand without knowing what he or she is
going to say.  If I cannot interview a witness prior to
his or her testimony, I do not know whether the
testimony will help or hurt the defense.  Compelling
prostitution is a 3rd degree felony and I have
absolutely no doubt that Andre Seay would have never
testified in any way, let alone favorably for Mr.
Gosdin.  Additionally, I did not believe that I needed
his testimony.  I believed that it would be more
credible for the jury to be able to imagine the worst
when it came to the "mysterious Andre C."  It was a
tactical decision that I made in the trial to limit the

testimony presented to the jury while leaving the
option open that somehow this was all a matter of a
pimp being upset about not getting his money.

Mr. Gosdin believes that I should have asked more
questions of witnesses, but I believe that I got my
point across as well as anyone could have with a small
number of questions.  For example, I believe that I
could have asked the complainant more questions about
her version of the story, but after she admitted that
she "shot up" heroin "last night" before she came to
testify in the morning, I felt that the jury may not
find anything else as damning in her testimony.

(SHR at 45-46)

Mr. Gosdin believes that I was ineffective by not
determining whether I needed to hire an expert witness
on the subject of prostitution to assist me in the
preparation and trial of this matter.  Although Mr.
Gosdin now has plenty of time to look up articles about
prostitution and the exploitation of women, his
accusation that I was ineffective because I did not
present evidence for the jury to "understand the
subculture of prostitution," which led to the State's
"free rein to mislead the jurors with myths,
misconceptions, and stereotypes about prostitutes," is
without merit, in my opinion.  Other than making broad
statements about the subject, he does not state with
any specificity what an expert would have actually
stated or how that testimony would have aided his case.

I have actually spoken to a large number of women
(and men) involved in a variety to [sic] prostitution
activities, including, street walkers, dancers, and
people in the massage or body rub business.  While I
would not be able to be a testifying expert in Mr.
Gosdin's case, I have enough knowledge about the
industry, especially the industry in the Tarrant County
area, that it would have been unnecessary to have Mr.
Gosdin hire a supposed expert in the area.

It was a tactical decision to not dwell too much

on the fact that the complainant was involved in the
prostitution business and press the issues in front of
the jury.  I believed that the jury would have been
angrier with Mr. Gosdin if I had done that.

(SHR at 44)

The state habeas court entered findings of fact consistent

with counsel's affidavit and, applying the *Strickland* standard,

concluded that counsel's decisions were reasonable trial

strategy.  (SHR at 56-58, 60)  Deferring to the state court's

findings, petitioner has failed to demonstrate the state courts

unreasonably applied *Strickland*.  28 U.S.C. § 2254(d).

As noted by the state court, "strategic choices made after

thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable." *Strickland*, 466 U.S. at

690.  "'A conscious and informed decision on trial tactics and

strategy cannot be the basis for constitutionally ineffective

assistance of counsel unless it is so ill chosen that it

permeates the entire trial with obvious unfairness.'" *United

States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting

*Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).  The

strategy adopted by counsel faced with the facts of this case was

not so ill-chosen as to render petitioner's trial unfair.

Counsel's decision to base his defense on the proposition that

the complainant was a prostitute and heroin user and was consciously lying because she did not get paid for services rendered was reasonable. Further, even if Andre C. had been subpoenaed, it would have been imprudent of counsel to call him as a witness without first interviewing him and it is highly likely that he would have asserted his Fifth Amendment right on the stand. Nor does the court see how expert testimony concerning the "subculture" of prostitution would have altered the result in this case given the overwhelming evidence of petitioner's guilt.

Lastly, petitioner claims counsel's cumulative errors amount to ineffective assistance of counsel. (Pet. at 9) Counsel responded to this allegation as follows:

> Had Mr. Gosdin listened to my advice, he would be well on his way to having completed his term of imprisonment. Mr. Gosdin was offered 15 years in exchange for a plea of guilty and he refused to entertain that offer or make any counter offers. Mr. Gosdin refused my advice to hire a private investigator and refused my advice to hire a polygraph examiner. Mr. Gosdin continually maintained that money was not the issue, even when I informed him that if he had become indigent, I could come to the Court to seek funds to hire an investigator. Mr. Gosdin refused to let his hair grow over the tattoos on the top of his head and did not cover them with makeup or clothing to prevent the jury from being able to see them.
>
> As for the selection of the jury in this matter, I provided Mr. Gosdin with a seating chart and a pen in

23

order for him to make notes of anything that he observed during the voir dire.  At the end of voir dire, the peremptory strikes were based upon a full discussion about the strikes and upon the approval of Mr. Gosdin.  Although I do not have a specific memory of it, I believe that you will find, in the sealed portion of the Court's record, that Mr. Gosdin's signature is affixed to the peremptory strike list provided by the Court, as evidence that Mr. Gosdin agreed to the strikes used in his defense.

I can only try a case with what I am given and Mr. Gosdin did not present me with a case that should have been tried.  He was advised that the case would be very difficult to win and that in order to win, I would have to try to convince the jury that this was a prostitute that was just upset about getting ripped off for a blow job.  I told him that it was going to be difficult to do, especially because a prostitute generally does not get fully undressed to give someone a blow job inside of a pickup truck.  It is also difficult for a jury to overlook the fact that the complainant was able to fully describe the knife, including the jagged top edge of the blade if the knife was inside a sheath and in the driver's door pocket.  It is hard to get a jury to disregard the fact that the complainant testified that Mr. Gosdin took of [sic] picture while he was sexually assaulting her and described the cell phone and that Mr. Gosdin's wife was in possession of a similar cell phone and testified that she deleted a photograph of a penis inside a vagina that she didn't remember being taken of her vagina shortly before the police came to process the phone.

The reports that I received from actual jurors who listened to the case were that Mr. Gosdin was found guilty because of the extremely strong evidence against him and that the fact that he did not testify had absolutely noting to do with it.

Had the District Attorney been fully prepared and made sure that DNA testing of the bodily fluids found during the rape exam of the complainant was completed

24

before trial, the evidence against Mr. Gosdin would
have been even more damning.

The United States and Texas Constitutions
guarantee a defendant the right to a jury trial.  Even
though this is a right afforded to all defendants, it
is not necessarily a right that should be exercised by
all defendants.  Mr. Gosdin chose to exercise his right
to have a trial and it was my duty to make sure that
the jury did not convict unless they were convinced
beyond a reasonable doubt as to his guilt.  The
evidence that the District Attorney legally presented
to the jury was, in my opinion, plenty sufficient to
show any reasonable jury that Dennis Michael Gosdin
was, in fact, guilty of aggravated sexual assault with
a deadly weapon.  I have no doubt about how I conducted
myself during this trial.

(SHR at 47-48)

The state habeas court entered findings of fact consistent

with counsel's affidavit–*i.e.*, counsel employed reasonable trial

tactics and strategy, properly did not seek to suppress

admissible evidence, reasonably conducted voir dire, investigated

the case, fully prepared for petitioner's trial, and

strategically decided not to call witnesses whose testimony would

hurt the defense, and applying the *Strickland* standard, concluded

counsel provided adequate representation and the evidence

undercut any likelihood that the outcome of petitioner's case

would have been different with another counsel of if counsel had

represented him in another manner.  (SHR at 58, 60, 63)

Deferring to the state court's findings, petitioner has failed to

25

demonstrate the state courts unreasonably applied *Strickland*.   28

U.S.C. § 2254(d).

Petitioner presents this argument apparently in the event

that the other errors which he alleges fail to rise to the level

of ineffective assistance of counsel.   Petitioner provides no

legal basis for this argument in a conclusory briefing.   (Pet. at

9)   Further, there is no precedent supporting the idea that a

series of "errors" that fail to meet the standard of objectively

unreasonable can somehow cumulate to meet the high burden set

forth in Strickland.   *United States v. Thomas*, 724 F.3d 632, No.

12-60707, slip op. (5th Cir. Aug. 1, 2013) (citing *Strickland*,

466 U.S. at 689 ("[T]he purpose of the effective assistance

guarantee of the Sixth Amendment is not to improve the quality of

legal representation . . . .   The purpose is simply to ensure

that criminal defendants receive a fair trial.")).

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,

denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate

Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases

in the United States District Court, and 28 U.S.C. § 2253(c), for

the reasons discussed herein, the court further ORDERS that a

certificate of appealability be, and is hereby, denied, as

petitioner has not made a substantial showing of the denial of a

constitutional right.

SIGNED September ___20___, 2013.


_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

27